UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 04-5230

FILED
AUG 22 2005
LEONARD GREEN, Clerk

EDWARD B. BENZON, et al.,
    Plaintiffs - Appellants,

v.

MORGAN STANLEY DISTRIBUTORS, INC.; MORGAN STANLEY INVESTMENT ADVISORS, INC.; MORGAN STANLEY INVESTMENT MANAGEMENT, INC.; MORGAN STANLEY INVESTMENTS, L.P.; MORGAN STANLEY DW, INC.; and MORGAN STANLEY,
    Defendants - Appellees.

Before: CLAY, Circuit Judge; GRAHAM, District Judge.

## JUDGMENT

On Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION WHEREOF, it is ORDERED that the judgment of the district court is AFFIRMED in its entirety.

                              ENTERED BY ORDER OF THE COURT

                              Leonard Green, Clerk

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 05a0362p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

**FOR YOUR INFORMATION**

EDWARD B. BENZON, et al.,

    *Plaintiffs-Appellants,*

v.

No. 04-5230

MORGAN STANLEY DISTRIBUTORS, INC.; MORGAN STANLEY INVESTMENT ADVISORS, INC.; MORGAN STANLEY INVESTMENT MANAGEMENT, INC.; MORGAN STANLEY INVESTMENTS, L.P.; MORGAN STANLEY DW, INC.; and MORGAN STANLEY,

    *Defendants-Appellees.*

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 03-00159—Todd J. Campbell, District Judge.

Argued: March 18, 2005

Decided and Filed: August 22, 2005

Before: CLAY, Circuit Judge; GRAHAM, District Judge.[*]

---

## COUNSEL

**ARGUED:** H. Naill Falls, Jr., FALLS & VEACH, Nashville, Tennessee, for Appellants. Richard A. Rosen, PAUL, WEISS, RIFKIND, WHARTON & GARRISON, New York, New York, for Appellees. **ON BRIEF:** H. Naill Falls, Jr., FALLS & VEACH, Nashville, Tennessee, Jonathan D. Rose, BOULT, CUMMINGS, CONNERS & BERRY, Nashville, Tennessee, for Appellants. Richard A. Rosen, PAUL, WEISS, RIFKIND, WHARTON & GARRISON, New York, New York, for Appellees.

---

[*] The Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

The Honorable Martha Craig Daughtrey, Circuit Judge, was present at oral argument but did not take part in the consideration or decision of the case.

1

## OPINION

CLAY, Circuit Judge. Plaintiffs in this putative class action, all of whom are investors in Class B shares of Morgan Stanley mutual funds, appeal the district court's order of dismissal for failure to state a claim upon which relief can be granted in connection with their federal law claims[1] against Defendants, Morgan Stanley Distributors, Inc., Morgan Stanley Investment Advisors, Inc., Morgan Stanley Investment Management, Inc., Morgan Stanley Investments L.P., Morgan Stanley DW, Inc., and Morgan Stanley.

Specifically, Plaintiffs appeal the district court's dismissal of: 1) their claim that Defendants violated federal securities law, including § 12 of the Federal Securities Act of 1933, 15 U.S.C. § 77*l*, § 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j, and Rule 10b-5(b) of the Securities and Exchange Commission ("SEC") Regulations promulgated under the 1934 Act, by failing to disclose information in their prospectuses regarding the relative value of Class B shares in mutual funds offered by Defendants; 2) their claim that Defendants violated SEC Rule 10b-5(a) and Rule 10b-5(c), by selling Class B shares in mutual funds, which Plaintiffs allege assess unnecessary fees; and 3) their claim that Defendants violated 15 U.S.C. § 77*l*(a)(2) and SEC Rule 10b-5(b) by failing to disclose a broker compensation scheme which they allege works a conflict of interest. Plaintiffs also appeal from the district court's denial of their motion, filed after the entry of judgment in this case, for leave to file an amended complaint.

For the reasons that follow, we **AFFIRM** the district court in all respects.

## I. BACKGROUND

### A. Substantive Facts

#### 1. *The Facts Set Forth in the Complaint*

This case is before us on an appeal from a dismissal for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In reviewing such a dismissal, this Court "must accept all well-pleaded factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002) (citing *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998)). The facts alleged by Plaintiffs in their second amended complaint are set forth below.

Defendants operate over sixty mutual funds, the shares of which are marketed to U.S. investors. The "Morgan Stanley Funds" are marketed as a "family of mutual funds." Investors are permitted to exchange shares in one Morgan Stanley Fund for shares in another Morgan Stanley fund at no cost. Most Morgan Stanley Fund shares are marketed and sold to investors who have brokerage accounts with Morgan Stanley DW, Inc.

The majority of Morgan Stanley Funds are offered in different share classes, designated as "A," "B," "C," and other share classes. The share classes are for the same underlying portfolio of investments, but each class differs in its expense structure.

---

[1] The district court, having dismissed Plaintiffs' federal claims, declined to exercise supplemental jurisdiction over Plaintiffs' individual state law claims, and dismissed them without prejudice. Plaintiffs have not appealed that decision.

For Class A shares in equity funds, Morgan Stanley typically charges a "front-end load," paid at the time of the initial investment. The front-end load is 5.25% for investments less than $25,000, decreases incrementally as the amount of the investment increases, and is eliminated altogether for investments of at least one million dollars. Class A shareholders are charged an annual distribution fee of .25%.

Class B shares, which are at the center of the dispute in this case, are offered with no initial sales charge, but are subject to a "back-end load," or contingent deferred sales charge ("CDSC"), ranging from five percent in the first year the shares are held to one percent in the sixth year. There is no CDSC for Class B shares held for more than six years. Class C shares are also offered with no initial sales charge, but are subject to a CDSC of one percent if sold within a year of purchase. Class C shares never convert to Class A shares. According to Plaintiffs, Morgan Stanley claims to "normally" charge Class B and C shareholders an annual distribution fee of one percent, but in practice many Morgan Stanley funds charge slightly lower annual fees for Class C shares than for Class B shares.

Plaintiffs allege that Class B shares are inferior to Class A and/or C shares for any type of investment strategy, whatever the amount of the investment or intended holding period. We emphasize here that Plaintiffs are not asserting that Class B shares are always inferior to both Class A or Class C shares, but rather that Class B shares are always inferior to at least one of either Class A or Class C shares. In other words, Plaintiffs contend that B shares are never the best option, but not that they are always the worst. Plaintiffs further allege that Defendants promote Class B shares even though they know that Class B investors will pay more fees and earn less profits than if they had chosen, depending on their circumstances, either Class A or Class C shares, and that Defendants knowingly fail to inform investors of this fact.

Plaintiffs also allege that Morgan Stanley earns more money per dollar invested in Class B shares than in other class shares, and that its broker compensation structure creates more attractive incentives for the sale of Class B shares and for the sale of in-house mutual funds generally, but that this information is not disclosed to investors.

Additionally, the complaint alleges facts related to the individual claims of each of the eight named plaintiffs. Because those individual claims are not before us, we will not engage in an extensive discussion of those allegations. It will suffice to note that all of the plaintiffs assert that Morgan Stanley financial advisors inappropriately invested their money in Class B shares, without explaining the differences between the share classes or explaining that Class B shares involved "unnecessary fees," and that they sustained significant losses as a consequence.

2.     *A Note On The Prospectus*

In addition to the facts set forth in the complaint, the district court considered the prospectus at issue in this case.[2] Ordinarily, when a district court considers evidence outside the pleadings, a 12(b)(6) motion will "be treated as one for summary judgment and disposed of as provided in Rule 56." FED. R. CIV. P. 12(b)(6). However, a written instrument attached as an exhibit to a pleading is considered a part of the pleading, and thus does not fall under the just-cited rule. *See* FED. R. CIV. P. 10(c). The district court and the parties apparently assumed that the prospectuses attached to the motion to dismiss constitute written instruments, as they all agreed that the prospectuses should be considered, and yet did not suggest that the 12(b)(6) motion was thus converted into a summary

---

[2]While Defendants attached several prospectuses to their Rule 12(b)(6) motion, it was specifically the Morgan Stanley "Strategist Fund" prospectus dated September 30, 2002 that was cited as an example in that motion and examined by the district court. References in this opinion to the "prospectus" are to that prospectus, unless otherwise noted.

judgment motion. We will also consider the prospectuses in our review, as neither party objects and they are obviously central to Plaintiffs' claims that the prospectuses include material omissions and misrepresentations. *See I. Meyer Pincus & Assocs v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2nd Cir. 1991) (court "examine[s] prospectus together with the allegations contained on the face of the complaint" where claims within the complaint are based only on an alleged written misrepresentation appearing within the prospectus).

Many facts disclosed in the prospectus are set forth in the complaint and therefore have already been discussed. We note that Defendants point out in their brief on appeal that, in addition to the facts included in the complaint, the prospectus states that investors in B shares, but not A shares, may make annual withdrawals of up to twelve percent of their investment in B shares without paying a CDSC. The prospectus also states that B shares, unlike C shares, automatically convert to A shares after ten years.

## B.     Procedural History

Plaintiffs filed their first complaint in this case in the United States District Court for the Middle District of Tennessee on February 24, 2003, asserting class action claims under the federal securities laws on behalf of the named plaintiffs and all others who purchased Class B shares of Morgan Stanley mutual funds between February 25, 1998, and the present. Specifically, the complaint alleged that: 1) Defendants violated § 12(a)(2) of the Federal Securities Act of 1933 ("FSA"), 15 U.S.C. § 77*l*(a)(2), by failing to disclose material facts necessary to make statements made in connection with the sale of securities not misleading; 2) Defendants violated § 11 of the FSA by omitting material facts in the registration statements of Morgan Stanley's mutual funds necessary to make the statements therein not misleading; 3) Defendants intentionally and/or recklessly employed devices, schemes, and artifices to defraud in violation of § 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j, and Rule 10b-5(a) of the SEC Regulations promulgated under that Act; 4) Defendants intentionally and/or recklessly omitted to state material facts necessary to make statements made to Plaintiffs not misleading, in violation of § 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j, and Rule 10b-5(b) of the SEC Regulations promulgated under that Act; and 5) Defendants intentionally and/or recklessly engaged in acts, practices, and a course of business which operated as a fraud or deceit on Plaintiffs, in violation of § 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j, and Rule 10b-5(c) of the SEC Regulations promulgated under that Act. In addition to their class claims, Plaintiffs also asserted individual state claims, including violations of Ohio, Tennessee, and North Carolina securities laws and common law fraud claims. Again, the district court's dismissal of the individual claims is not on appeal to this Court.

On March 17, 2003, Plaintiffs filed a first amended complaint, adding two new plaintiffs. Defendants moved to dismiss Plaintiffs' amended complaint and to compel arbitration of Plaintiffs' individual claims on September 2, 2003. On October 6, 2003, Plaintiffs filed a brief in opposition to Defendants' motion to dismiss, and, the following day, a motion for leave to file a second amended complaint. That motion was granted by the magistrate judge, and the second amended complaint was filed on October 29, 2003. The second amended complaint included expanded factual allegations regarding Plaintiffs' claim that Defendants failed to disclose that its broker compensation structure creates more attractive incentives for the sale of Class B shares and for the sale of Morgan Stanley mutual funds (relative to mutual funds sold by companies unaffiliated with Morgan Stanley), thus creating a financial conflict of interest for Morgan Stanley brokers.

Oral argument on Defendants' motion to dismiss was heard on December 19, 2003. On January 8, 2004, the district court granted Defendant's motion to dismiss Plaintiffs' federal claims under Rule 12(b)(6). Having done so, the district court declined to exercise supplemental

jurisdiction over Plaintiffs' state law claims, and dismissed them without prejudice, pursuant to 28 U.S.C. § 1367(c)(3).

On January 20, 2004, Plaintiffs filed a motion to alter or amend the judgment, pursuant to Federal Rule of Civil Procedure 59(e), and for leave to amend their claims against Morgan Stanley DW, Inc., in order to assert claims under SEC Rule 10b-5 on behalf of all who purchased Morgan Stanley Class B mutual fund shares during the class period whose purchase was solicited by a Morgan Stanley broker. On February 5, 2004, the district court denied Plaintiffs' motion to alter or amend the judgment, for the reasons stated in its memorandum of January 8, and denied as untimely and moot Plaintiffs' motion for leave to file an amended complaint.

On February 17, 2004, Plaintiffs filed a notice of appeal to this Court from the district court's order dismissing the action and from the district court's order denying Plaintiffs' motion to alter or amend judgment and for leave to file an amended complaint.

## II. DISCUSSION

### A.   Standard of Review

Plaintiffs' first three claims all relate to the district court's grant of Defendants' motion to dismiss for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). We review *de novo* a district court's dismissal of a complaint under Rule 12(b)(6). *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 680 (6th Cir. 2004) (citing *Valassis Communications v. Aetna Cas. & Sur. Co.*, 97 F.3d 870, 873 (6th Cir. 1996)).

As noted above, a court considering a motion to dismiss under Rule 12(b)(6) "must accept all well-pleaded factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002) (citing *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998)). "Dismissal of the complaint is proper 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

Plaintiffs' final claim challenges the district court's denial of their motion for leave to file a third amended complaint. We review for abuse of discretion a district court's denial of leave to amend. *Miller v. Champion Enters., Inc.*, 346 F.3d 660, 671 (6th Cir. 2003). "Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment." *Leary v. Daeschner*, 349 F.3d 888, 904 (6th Cir. 2003) (quoting *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996)).

### B.   Plaintiffs' Claim of Disclosure Violations Regarding the Relative Value of B Shares

   1.   *Regulations and Statutes Cited by Plaintiffs*

Class claims one and four of Plaintiffs' second amended complaint relate to the issue of whether Defendants violated federal securities law by failing to disclose information in their prospectuses regarding the relative value of Class B shares in mutual funds offered by Defendants.[3]

---

[3] With respect to each of these claims, Plaintiffs charge all Defendants but Morgan Stanley with the alleged conduct, and allege that as the parent company, Morgan Stanley "is a controlling person of the other defendants and is therefore liable." J.A. at 289, 290, 292

Count One alleges that under § 12 of the Federal Securities Act of 1933, 15 U.S.C. § 77*l*, "Defendants had a duty to disclose, but did not disclose, … material information … concerning the superiority of Class A and/or Class C shares, as compared to Class B shares." Second Amended Complaint, J.A. at 288. Section 77*l* imposes liability on any person who

> offers or sells a security … by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission.

15 U.S.C.A. § 77*l*(a)(2).

In Count Four, Plaintiffs allege that Defendants "intentionally and/or recklessly omitted to state material facts necessary to make the statements to plaintiffs not misleading, in violation of § 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j, and Rule 10b-5(b) of the SEC Regulations promulgated under that Act." Second Amended Complaint, J.A. at 291. Plaintiffs' argument before this Court centers on their claim that Defendants violated Rule 10b-5(b), which makes it:

> unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange …
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

17 C.F.R. § 240.10b-5(b)

2.   *Plaintiffs' Argument*

Plaintiffs' argument is essentially that reasonable jurors could conclude that statements in Defendants' prospectuses are misleading, and that under § 12 of the Securities Act of 1933 and SEC Rule 10b-5(b), Defendants consequently have a duty to make further disclosures in order to make the statements in the prospectus not misleading. Plaintiffs argue that they are entitled to relief because Defendants did not comply with this duty.

Plaintiff cites from Defendants' prospectus, which includes the following statements which Plaintiffs find objectionable:

- "Each class has a different combination of fees, expenses, and other features, which should be considered in selecting a Class of shares." Pl.'s Brief at 16; J.A. at 82.

- "Because every investor has different immediate financial needs and long-term investment goals, the Fund offers investors four Classes of shares … Each Class of shares offers a distinct structure of sales charges, distribution and service fees, and other features that are designed to address a variety of needs." Pl.'s Brief at 17; J.A at 85.

- "In deciding which Class of Fund shares to purchase, investors should consider the following factors, as well as any other relevant facts and circumstances: The decision as to which Class of shares is more beneficial to an investor depends on the amount and intended length of his or her investment. Investors who prefer an initial sales charge alternative may elect to purchase A shares. Investors qualifying for significantly reduced, or, in the case of purchases of $1 million or more, no initial sales charges may find Class A shares particularly attractive because similar sales charge reductions are not available with respect to Class B or Class C shares. Moreover, Class A shares are subject to lower ongoing expenses than are Class B or Class C shares over the term of the investment. As an alternative, Class B and Class C shares are sold without any initial sales charge so the entire purchase price is immediately invested in the Fund. *Any investment return on these additional investment amounts may partially or wholly offset the higher annual expenses of these classes.*" Pl.'s Brief at 17, J.A. at 151 (emphasis added).[4]

- "The Fund will generally not accept a purchase order for Class B shares in the amount of $100,000 or more." Pl.'s Brief at 17, J.A. at 94.

Plaintiffs argue that these statements are misleading because they suggest to investors that Defendants have "carefully created its four share classes to meet different investment objectives and that each class is a legitimate, rational choice that may be best for certain types of investment strategies. This proposition is simply not accurate with respect to Class B." Pl.'s Brief at 18. Plaintiffs contend that Defendants mislead investors into believing that it may be a rational strategy to invest amounts up to $100,000 in B shares, when it is a "mathematical fact" that Class A shares will yield higher net returns on investments over $50,000 than Class B shares.

According to Plaintiffs, Defendants' misleading discussion gave rise to an obligation to disclose "certain specific facts about the holding periods and investment amounts with respect to which different share classes will perform best." Pl.'s Brief at 20. Plaintiffs suggest that the prospectuses should have disclosed, with respect to investments of less than $50,000, that Class C shares would produce a greater net return for holding periods of less than six years, that shares in Classes B and C would produce equal returns for periods of six to eight years, and that there is a great likelihood that Class A shares would produce a greater net return than shares in either B or C. With respect to investments of more than $50,000, Plaintiffs contend that the prospectuses should have disclosed there was a great likelihood that Class A shares would produce a higher net return than Class B shares, regardless of the holding period, and that for holding periods of more than ten years, Class A shares would produce a net return thousands of dollars greater than a comparable investment in B shares. Pl.'s Brief at 20.

### 3    *Disclosures Contained in the Prospectus*

Defendants repeatedly and inaccurately claim that it is *undisputed* that their prospectuses contain "a completely accurate disclosure of all of the information required in Form N1-A." Def. Brief at 12, 15. Form N1-A is promulgated by the SEC and sets forth detailed requirements for information to be included in a prospectus. Plaintiffs do argue that Defendants failed to comply with Form N1-A, contending that Defendants failed to meet N1-A's requirements of a "balanced disclosure of positive and negative factors," and a clear explanation of the features of different share classes. We disagree with Plaintiffs, and conclude that Defendants satisfied those requirements.

---

[4] This statement is taken from Defendants' September 30, 1998 Strategist Fund Prospectus. (As per footnote two, the remaining statements are taken from the September 30, 2002 Strategist Fund Prospectus).

The prospectus does clearly comply with Form N1-A's requirement of a "Fee Table," which sets forth the maximum front-load sales charge, the maximum CDSC, and all annual fees for the different share classes. Additionally, as required, the prospectus includes an example setting forth the costs of investing $10,000 in the fund in various share classes, for one, three, and five years. The prospectus explains that while "Class B and Class C shares do not have any front-end sales charges, their higher ongoing annual expenses (due to higher 12b-1 fees) mean that over time you could end up paying more for these shares than if you were to pay front-end sales charges for Class A shares."

Indeed, as Defendants point out, all of the information that Plaintiffs needed in order to support their claim that Class B shares are never the best option for an investor is available in the prospectus.[5]

### 4.  *Alleged Omissions Were Not Material*

"In order to be actionable, a misrepresentation or omission must pertain to material information that the defendant had a duty to disclose." *City of Monroe v. Bridgestone Corp., et al.*, 399 F.3d 651, 669 (6th Cir. 2005) (citing *Basic v. Levinson*, 485 U.S. 224, 238; *In Re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1432 (3d Cir. 1997)). The district court correctly determined that federal securities law does not require Defendants to make statements of the type suggested by Plaintiffs regarding the relative merits of different class shares.

All of the information from which Plaintiffs' claims regarding Defendants' failure to make statements regarding the relative merits of different class shares are drawn is available in Defendants' prospectuses. Plaintiffs argue that this information was not presented clearly enough to satisfy the requirements of Form N1-A. Having reviewed the prospectuses, we reject that contention. The information needed to compare the relative merits of the three class shares is presented in easily-read tables and straightforward narratives describing those tables. Although, in reviewing a grant of a motion to dismiss, we must accept well-pleaded facts as true, we "need not accept as true . . . unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

Given that all of the information necessary to compare the different class shares was in the prospectuses, the alleged omissions in this case are not material. "Materiality depends on the significance the reasonable investor would place on the withheld . . . information." *Helwig v. Vencor, Inc.*, 251 F.3d 540, 555 (6th Cir. 2001) (en banc). While statements of the type proposed by Plaintiffs *might* have facilitated an investor's task in comparing the share classes,[6] the critical question is whether they would have "significantly altered the 'total mix' of information made available." *Id.* at 563 (quoting *Basic*, 485 U.S. at 231-32). Given that the disclosures Plaintiffs propose are merely interpretations drawn from the facts presented in the prospectuses, and do not actually provide new information, they would not have "significantly altered the 'total mix'" of the information already presented in the prospectuses.

---

[5] Defendants dispute Plaintiffs' characterization of the facts, and assert that Plaintiffs "omit a number of critical features of B shares' fee structure that makes them in many situations less expensive than other share classes." Def. Brief at 9. However, because this case is before the Court on review from a grant of a motion to dismiss for failure to state a claim, we accept as true all of Plaintiffs' well-pleaded allegations.

[6] We emphasize that we are not convinced that the statements suggested by Plaintiffs would necessarily be helpful to prospective investors. Limitations on disclosure requirements exist in part to protect investors from a "deluge" of "marginally useful information." *City of Monroe*, 399 F.3d at 669 (quoting *In Re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997)).

5.  *A Note on Defendants' "Merits Regulation" Argument*

Defendants argue that Plaintiffs inappropriate seek "a ruling that Class B shares are disadvantageous compared to Class A and Class C and that, *irrespective* of the accuracy of disclosure of all objective facts about their salient characteristics, it is fraud to offer them to the public," and that the securities laws are not designed for such "merits regulation." Def. Brief at 34.

We agree that Plaintiffs' argument that Defendants failed to make required disclosures regarding the relative merits of different share classes represents an attempt to shoehorn Plaintiffs' real quarrel, which is that Defendants offered these Class B shares at all, into a disclosure violations argument. Plaintiffs' disclosure claim is, effectively, that Defendants should have informed investors that Class B shares were less valuable than other class shares; such a disclosure requirement would presumably have the effect of ending sales of Class B shares. For the reasons just discussed, Plaintiffs' argument is unavailing under § 12 of the 1933 Federal Securities Act and SEC Rule 10b-5(b). Whether Plaintiffs can make what is essentially the same claim under Rule 10b-5(a) or 10b-5(c) is the subject of the next part of this opinion.

## C. Plaintiffs' Claims Under SEC Rule 10b-5(a) and (c).

1.  *The District Court's Failure to Consider Plaintiffs' Claims Under SEC Rule 10b-5(a) and (c)*

Plaintiffs argue that the district court erred by failing to address Plaintiffs' claims under SEC Rule 10b-5(a) and (c), and that they are entitled to relief under those subsections of Rule 10b-5, which provide:

> It shall be unlawful for any person, directly or indirectly by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
> (a) To employ any device, scheme, or artifice to defraud
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

We must first determine whether the district court considered 10b-5(a) and(c). Plaintiffs' argument is that 1) the district court's opinion only dealt with whether Defendants complied with their disclosure obligations and 2) that Rules 10b-5(a) and (c) do not require the making of a material misstatement or omission, i.e., do not require a showing of a disclosure violation.

Defendants counter that "the securities laws are about *disclosure*," such that the district court's determination that Defendants were not required to make additional disclosures with respect to the relative value of the different class shares, though addressed only to Plaintiff's 10b-5(b) claim, actually disposes of all 10b-5 claims. This argument finds some support in the case law. *See, e.g., Affiliated Ute Citizens v. United States, et. al.*, 405 U.S. 128, 151(1972) ("the 1934 Act and its companion legislative enactments embrace a 'fundamental purpose . . . to substitute a philosophy of full disclosure for the philosophy of caveat emptor'") (quoting *SEC v. Capital Gains Research Bureau*, 375 U.S. 180, 186 (1963)); *Nash v. Farmers New World Life Ins. Co.*, 570 F.2d 558, 562 n. 8 (6th Cir. 1978) ("The fundamental purpose of the Securities Exchange Act was to implement a policy of full disclosure").

Nonetheless, we agree with Plaintiffs that Rules 10b-5(a) and (c) encompass conduct beyond disclosure violations. The Supreme Court said as much in *Affiliated Ute Citizens*: "the second subparagraph of [Rule 10b-5] specifies the making of an untrue statement of a material fact and the omission to state a material fact. The first and third subparagraphs are not so restricted." 406 U.S. at 152-53. At least one district court within this Circuit has concluded, based on that language, that a defendant "not liable under Rule 10b-5(b) for failure to disclose . . . may still be held liable under Rule 10b-5(a) and 10b-5(c) as a participant in [an] allegedly fraudulent scheme." *Scholnick v. Schecter*, 752 F. Supp. 1317, 1323 (E.D. Mich. 1990). A plain-language reading of the Rule supports this view.

We therefore conclude that the district court's determination that Defendants complied with their disclosure obligations does not dispose of Plaintiffs' claims under Rule 10b-5(a) and (c), and we must now decide whether to reach the merits of those claims or remand the case to the district court for further consideration.[7] Two considerations weigh in favor of our reaching the merits of Plaintiffs' under Rule 10b-5(a) and (c). First, because this case is before us on review from a motion to dismiss, such that the entire record for review consists of the second amended complaint and the relevant prospectuses, these claims do not suffer from a lack of factual development that might make considering them difficult. Secondly, because our review of a district court's determination of a motion to dismiss is *de novo*, we are required in any event to take a fresh look at the issues presented by Plaintiffs. We conclude that it is appropriate and in the interest of judicial economy to consider the merits of Plaintiffs' claims under Rule 10b-5(a) and (c) despite the absence of a district court holding in that regard.

2.    *The Merits of Plaintiffs' Claim Under Rule 10b-5(a) and (c)*

Plaintiffs allege that Defendants have violated Rule 10b-5(a) and (c) because they "market to investors a false and misleading choice." Pl.'s Brief at 35. According to Plaintiffs, "[b]y offering alternative investment options, Morgan Stanley leads investors to believe that each is a legitimate investment – a rational choice that is best for certain investment strategies. . . . In knowingly selling an investment through which it seeks to collect completely unnecessary fees from investors, Morgan Stanley is engaged in a fraud." *Id.*

In *Affiliated Ute Citizens*, the Supreme Court observed that "Congress intended securities legislation enacted for the purpose of avoiding frauds to be construed 'not technically and restrictively, but flexibly to effectuate its remedial purposes.'" 406 U.S. at 451 (quoting *Capital Gains Research Bureau*, 375 U.S. at 195)). However, there is very little case law explaining more specifically what types of claims are actionable under these provisions, which would assist the Court in determining whether Plaintiffs have properly stated a claim that Defendants violated 10b-5(a) and (c). It is perhaps not surprising, then, that Plaintiffs cite only one case in support of their argument, which is essentially that it is a fraud to offer Class B shares. In that case, *United States v. Smithkline Beecham Clinical Labs*, 245 F.3d 1048, 1053 (9th Cir. 2001), which is not a securities case and does not discuss Rule 10b-5, the Ninth Circuit held that "knowingly billing for worthless services" is actionable under the False Claims Act, 31 U.S.C. § 3729.

Even assuming that the rule announced by the Ninth Circuit applies to the context of this case, it does not help Plaintiffs. Plaintiffs' complaint does not contend that Class B shares are worthless; it just asserts that other securities offered by Defendants are worth more. The fact that Defendants have offered certain securities which are more valuable to investors than other securities

---

[7] We cannot deem these claims implicitly considered and rejected, under *Ford Motor Co. v. Transport Indem. Co.* 795 F.2d 538, 543 (6th Cir. 1986), because the district court's determination of Plaintiffs other claims did not "necessarily preclude" relief under 10b-5(a) and (c)

it offers does not constitute fraud and is not actionable under Rule 10b-5(a) and (c), particularly given that Defendants' prospectuses disclose the information necessary to determine the relative value of the different class shares.

We pause here to note that the fact that Plaintiffs have not stated a claim under Rule 10b-5(a) and (c) does not mean that Plaintiffs have no recourse if Morgan Stanley brokers inappropriately invested Plaintiffs' funds into Class B shares when other class shares were obviously preferable. Plaintiffs maintain individual state law claims in that regard, which were dismissed without prejudice by the district court.

### D. Plaintiffs' Claim of Disclosure Violations Regarding the Broker Compensation Arrangement

Plaintiffs' complaint charged that Defendants violated federal securities law by failing to adequately disclose: 1) that Defendants' broker compensation structure creates more attractive incentives for the sale of Class B shares, and 2) that Morgan Stanley brokers receive higher commissions from the sale of Morgan Stanley funds than from the sale of mutual funds sold by companies not affiliated with Morgan Stanley.

As explained above, both 15 U.S.C. § 77*l*(a)(2) and SEC Rule 10b-5(b) make it unlawful to include in a prospectus "an untrue statement of a material fact" or to omit "to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading." 15 U.S.C. § 77*l*(a)(2); 17 C.F.R. § 240.10b-5(b). An omission is not actionable unless it "pertain[s] to material information that the defendant had a duty to disclose." *City of Monroe,* 399 F.3d 651, 669 (citations omitted).

Current SEC regulations, including Form N1-A, do not impose a disclosure obligation with respect to broker compensation. Therefore, Defendants had no duty to disclose that information unless it was necessary to make another statement contained in the prospectus not misleading.[8] The only statement in the prospectus related to broker compensation is: "[s]ales personnel *may* receive different compensation for selling each Class of share." (Emphasis added).

Plaintiffs assert that brokers *do* earn more for the sale of Class B shares than other types of shares, and that this statement is therefore misleading. We are unpersuaded by this semantic quibble. If anything, the inclusion of this statement in the prospectus (which, again, was not mandated by any current SEC regulation) served to put prospective investors on notice that there was a possibility that brokers were being compensated more highly for the sale of certain class shares than others, such that investors could pursue that line of inquiry with their financial advisors if they were concerned about broker incentives.[9]

We also conclude that Defendants did not have a duty to disclose that brokers received greater compensation for the sale of Morgan Stanley mutual funds than for the sale of funds offered by other companies. As just discussed, a duty to disclose information exists where it is necessary

---

[8] The district court disposed of Plaintiffs' claims regarding broker compensation by holding "[i]t is not 'hidden' from potential investors that Defendants make money and how much they make for each option. The Court finds that Defendants had no duty to provide more specific information in the prospectus concerning specific allocations of incentives given to brokers." J.A. at 54. This discussion does not adequately resolve Plaintiffs' claim that Defendants had an obligation to reveal that Morgan Stanley *brokers* (as opposed to Morgan Stanley itself) earned higher commissions for the sale of Class B shares than for the sale of other class shares.

[9] We reiterate that if Morgan Stanley financial advisors were not forthcoming with investors about the broker compensation structure, those investors may have individual claims.

to make another statement not misleading. Plaintiffs have identified no such statement here. A duty may also be imposed by statute or regulation, but Plaintiffs have pointed no statutory or regulatory requirement that Defendants disclose that their brokers earn more for selling their own mutual funds. Because Plaintiffs have failed to identify the source of Defendants' alleged duty to disclose that brokers were compensated more for the sale of Morgan Stanley funds than other funds, we hold that the dismissal of Plaintiffs' claim that Defendants violated the securities laws by not making such a disclosure was proper.

### E. Plaintiffs' Motion for Leave to File a Third Amended Complaint

Following the trial court's entry of judgment for Defendants in this case, Plaintiffs moved to alter or amend the judgment, pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, and for leave to amend their claims against Morgan Stanley DW, Inc., pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. Plaintiffs sought to "assert claims under SEC Rule 10b-5 on behalf of every person who purchased Morgan Stanley Class B mutual fund shares during the class period whose purchase was *solicited* by a Morgan Stanley broker." Pl.'s Motion to Alter or Amend Judgment and for Leave to File Amended Complaint, J.A. at 393. The district court denied the motion to alter or amend the judgment for the reasons stated in the memorandum accompanying its previous order, and denied the motion for leave to file an amended complaint as untimely and moot. Plaintiffs appeal the denial of the motion for leave to file an amended complaint.

Once final judgment has been entered: "[A] party may not seek to amend their complaint without first moving to alter, set aside, or vacate judgment pursuant to either Rule 59 or Rule 60 of the Federal Rules of Civil Procedure.... Where a timely motion to amend judgment is filed under Rule 59(e), the Rule 15 and Rule 59 inquiries turn on the same factors." *Morse v. McWhorter*, 290 F.3d 795, 799 (6th Cir. 2002) (citations omitted).

Rule 15(a) states that "leave shall be freely given when justice so requires." FED. R. CIV. P. 15(a). Denial may be appropriate, however, where there is 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.'" *Morse*, 290 F.3d at 800 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Moreover, "in the post-judgment context," this Court "must also take into consideration the competing interest of protecting the 'finality of judgments and the expeditious termination of litigation.'" Thus the Court "must be particularly mindful of... the movant's explanation for failing to seek leave to amend prior to the entry of judgment." *Id.* (citations omitted).

The district court rejected the motion for leave to amend as "untimely and moot," without further explanation. Plaintiffs' Rule 59(e) motion was not technically untimely, however; Rule 59(e) sets forth a ten-day period for filing after the entry of judgment, exclusive of intermediate Saturdays and Sundays and holidays. FED. R. CIV. P. 59(e); FED. R. CIV. P. 6(a). Judgment in this case was entered on January 8, 2004, and Plaintiffs filed their motion on January 20, 2004. Given that January 10, 11, 17, and 18 were all Saturdays and Sundays, and January 19 was Martin Luther King, Jr. Day, Plaintiffs were easily within the ten-day period.

However, Plaintiffs' Rule 15 motion is untimely in the sense that there was "undue delay," because Plaintiffs offer no reason for their failure to move to amend their complaint prior to the district court's dismissal. Their argument in support of the claims they seek to amend is that "a purchase solicited by Morgan Stanley stands in a different legal light with respect to the duty to disclose issues addressed in the trial court's decision to dismiss the case." Pl.'s Brief at 43. All of the cases that they cite in support of that proposition were decided well before the dismissal of the complaint in this case, and Plaintiffs do not claim that new facts emerged to justify their delay in seeking to amend the complaint. Furthermore, Plaintiffs had already been permitted twice to amend

the complaint, prior to the entry of judgment against them. *See Foman*, 371 U.S. at 182 (denial may be appropriate where there is "repeated failure to cure deficiencies by amendments previously allowed"). Under these circumstances, we cannot say that the district court abused its discretion in denying Plaintiffs' motion for leave to amend the second amended complaint.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court in its entirety.